**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carlos Hernandez,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Scottsdale Hotel Group LLC, et al.,<br><br>　　　　Defendants. | No. CV-20-00349-PHX-DWL<br><br>**ORDER** |

Plaintiff Carlos Hernandez ("Plaintiff") has asserted federal civil rights claims and a state-law defamation claim against his former employer, Scottsdale Hotel Group, LLC ("The Scott"), and his former supervisor, Anne Schwanz ("Schwanz") (collectively, "Defendants"). (Doc. 1.) Now pending before the Court are Defendants' motions to dismiss the defamation claim. (Docs. 9, 22.) For the following reasons, the motions will be granted.

## BACKGROUND

I.　Plaintiff's Allegations

The following allegations, taken as true, are derived from the complaint. (Doc. 1.) In December 2017, Plaintiff began working as an on-call banquet server at The Scott, a hotel in Scottsdale, Arizona. (*Id.* ¶¶ 2, 9.) The Scott employed three full-time banquet servers and about 19 on-call banquet servers. (*Id.* ¶ 9.) On-call banquet servers were not guaranteed a 40-hour work week and typically worked two to four days per week. (*Id.* ¶ 10.) Plaintiff and other on-call servers aspired to one of the three full-time positions,

which could earn close to $100,000 per year. (*Id.*) There were also three "Banquet Captains," all of whom were Caucasian. (*Id.* ¶ 9.) Most of the servers were Hispanic. (*Id.*)

In February 2019, Plaintiff complained to his superiors of being sexually harassed by one of the Banquet Captains. (*Id.* ¶ 11-12.)[1] The Banquet Captain was made to apologize to Plaintiff, but Plaintiff continued to work under this Banquet Captain, who proceeded to treat Plaintiff harshly and watch him closely. (*Id.*)

At an unspecified time, the Director of Banquets, who had a supervisory role over all staff members, told Plaintiff she intended to offer him a full-time position starting in September 2019. (*Id.* ¶ 10.) However, in July 2019, that Director "left the employ of the Scott" and was thereafter replaced by Schwanz. (*Id.*) Plaintiff noticed that after Schwanz took over, she gave more shifts to a Caucasian, female on-call server at Plaintiff's expense. (*Id.* ¶ 13.)

On September 5, 2019, Plaintiff emailed Schwanz to ask why the other employee received more shifts and to say he would like the same opportunities. (*Id.* ¶ 14.) Schwanz's email response was positive, telling Plaintiff she appreciated his directness because she did not tolerate negativity. (*Id.*) Plaintiff worked one shift after this email exchange without incident. (*Id.* ¶ 15.)

On September 11, 2019, during his next shift, Plaintiff and a fellow employee were discussing changes to the workplace since Schwanz took over as Director of Banquets. (*Id.*) When Schwanz heard of this discussion, she called Plaintiff into the office of The Scott's human resources manager, Nancy Silver ("Silver"), and fired Plaintiff for having "a negative conversation." (*Id.* ¶¶ 9, 15.) The fellow employee, who was not Hispanic, was not fired despite being involved in the same "negative" conversation. (*Id.*)

During the meeting in Silver's office, Schwanz also mentioned Plaintiff's September 5 email and stated that "she actually did not appreciate the email . . . and was hostile about it." (*Id.* ¶ 15.) Silver, in turn, agreed with Schwanz that the email was "out of line" and stated that Plaintiff was "nobody to ask his manager anything." (*Id.*)

---

[1] The complaint contains two paragraphs marked with the number twelve, both of which address this incident. (Doc. 1 at 4-5.)

The next day, September 12, 2019, Schwanz summoned all the employees under her supervision to a meeting. (*Id.* ¶ 16.) Schwanz told the employees about Plaintiff's September 5 email, saying that it was "rude, threatening and disrespectful" and "would not be tolerated." (*Id.*) Plaintiff alleges these statements were defamatory, harmed his professional reputation, and caused him emotional distress and worry. (*Id.* ¶ 17.)

II.  Procedural History

On February 17, 2020, Plaintiff filed his complaint. (Doc. 1.)

On April 14, 2020, Schwanz filed her motion to dismiss. (Doc. 9.) Thereafter, Plaintiff filed a response (Doc. 10) and Schwanz filed a reply (Doc. 11).

On July 6, 2020, The Scott filed its motion to dismiss. (Doc. 22.) Thereafter, Plaintiff filed a response (Doc. 24) and The Scott filed a reply (Doc. 26).

**DISCUSSION**

I.  Legal Standard

"[T]o survive a motion to dismiss under Rule 12(b)(6), a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting Iqbal, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 679. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

…

…

II.     Analysis

Defendants contend they are entitled to dismissal of the defamation claim because Schwanz's description of Plaintiff's email as "rude, threatening and disrespectful" was a non-actionable statement of opinion. (Doc. 9 at 2-5; Doc. 22 at 3-6.) In response, Plaintiff concedes that "rude" and "disrespectful" are non-actionable words of opinion but argues the word "threatening" is defamatory because it implies that Plaintiff threatened Schwanz. (Doc. 10 at 2-3; Doc. 24 at 2-3.)

Under Arizona law, "[t]o establish a prima facie case for defamation, a plaintiff must establish the existence of '(1) a false defamatory statement, (2) publication to a third party, and (3) negligence on the part of the publisher.'" *Hamilton v. Yavapai Cmty. Coll. Dist.*, 2016 WL 5871502, *2 (D. Ariz. 2016) (quoting *Boswell v. Phx. Newspapers, Inc.*, 730 P.2d 178, 180 (Ariz. Ct. App. 1985)). To "survive [a] motion to dismiss," a plaintiff must show that the alleged statements "are reasonably capable of sustaining a defamatory meaning" and "are not mere comment within the ambit of the First Amendment." *Knievel v. ESPN*, 393 F.3d 1068, 1073-74 (9th Cir. 2005) (internal quotation marks omitted). "Only statements which may be reasonably interpreted as factual assertions, not simply statements of opinion, are actionable as defamation." *Breeser v. Menta Grp., Inc.*, 934 F. Supp. 2d 1150, 1162 (D. Ariz. 2013). *See also Burns v. Davis*, 993 P.2d 1119, 1129 (Ariz. Ct. App. 1999) ("Statements that can be interpreted as nothing more than rhetorical political invective, opinion, or hyperbole are protected speech, but false assertions that state or imply a factual accusation may be actionable."). "To determine whether a statement can be reasonably interpreted as a factual assertion, a court must examine the totality of the circumstances in which it was made." *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1062 (D. Ariz. 2012) (internal quotation marks omitted). Relevant considerations include whether the "general tenor" of the statement suggests that the speaker was asserting objective fact, whether the speaker used figurative or hyperbolic language, and whether the statement is susceptible of being proved true or false. *Knievel*, 393 F.3d at 1075.

Plaintiff wisely concedes that two of the adjectives Schwanz used to describe his

email—"rude" and "disrespectful"—amount to non-actionable opinion, so the sufficiency of Plaintiff's defamation claim stands or falls on Schwanz's use of the word "threatening." The Court concludes that, just like the two adjectives that surround it, the word "threatening" in this context amounts to an opinion statement that cannot support a defamation claim. The tenor of Schwanz's statement indicates that she was expressing a subjective opinion rather than making an assertion of objective fact. She called the email "rude, threatening and disrespectful," which expresses a personal impression of the email. *Turner v. Devlin*, 848 P.2d 286, 292 (Ariz. 1993) (holding that letter describing police conduct as "rude and disrespectful" with a "manner border[ing] on police brutality" was "plainly" based on a "personal impression" and therefore non-actionable). Further, in this context, the term "threatening" is not provable or falsifiable. It does not suggest that Plaintiff actually made a threat, but rather that Schwanz perceived the email to be "threatening" (as well as rude and disrespectful).

Arizona courts have concluded that similar statements cannot support a defamation claim. In *Glaze v. Marcus*, a law school dean called a building safety coordinator's communications "unprofessional, insubordinate and abusive." 729 P.2d 342, 344 (Ariz. Ct. App. 1986).[2] The court held that such language was "pure opinion." *Id.* This was true even though the term "abusive" could, under a different set of circumstances, imply that the plaintiff had actually committed some form of physical abuse. *Cf. Turner*, 848 P.2d at 293 ("We agree . . . that an allegation of police brutality might, in some cases, be read as

---

[2] The Court notes that *Glaze* was decided before *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), which held there was no "wholesale defamation exemption for anything that might be labeled 'opinion.'" *Id.* at 18. But *Milkovich* retained the distinction between statements that imply a factual assertion, and thus can be proved true or false, and instances of "loose, figurative, or hyperbolic language" or instances where the "general tenor" of the statement negates the impression of a factual assertion. *Id.* at 21. Subsequent Arizona and Ninth Circuit decisions continue to analyze whether a statement is unfalsifiable commentary or implies a factual assertion. *See, e.g.*, *Knievel,* 393 F.3d at 1073-74 ("In order to survive ESPN's motion to dismiss, the Knievels must not only establish that the photograph and caption about which they complain are reasonably capable of sustaining a defamatory meaning, they must also show that they are not mere comment within the ambit of the First Amendment.") (citations and internal quotation marks omitted); *Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 449 (Ariz. Ct. App. 2015) ("Statements that can be interpreted as nothing more than rhetorical political invective, opinion, or hyperbole are protected speech, but false assertions that state or imply a factual accusation may be actionable.") (quoting *Burns*, 993 P.2d at 1129).

- 5 -

an allegation of physical abuse, but we do not believe it can reasonably be read that way in this case."). In the context of a supervisor commenting on an interaction with a subordinate, however, it expressed only the speaker's subjective impression of the subordinate's communications. *Glaze*, 729 P.2d at 344. So, too, here. Under a different set of circumstances, the word "threatening" might connote that a threat was made, but under these circumstances, such an inference would not be reasonable. *Turner*, 848 P.2d at 293. It would not be possible to prove or disprove Schwanz's subjective impression of the email as threatening. *Id.* at 292 ("We can conceive of no objective criteria that a jury could effectively employ to determine the accuracy of [defendant's] assessment.").

Finally, courts outside Arizona, when addressing similar uses of the word "threatening," have concluded that this description does not amount to defamation. *See, e.g.*, *Galland v. Johnston*, 2015 WL 1290775, *5-6 (S.D.N.Y. 2015) (statements that defendant found plaintiff's emails to be "threatening and disturbing" and that plaintiff "chooses to run his business in a threatening manner" were "not readily understood as having a precise meaning, nor are they susceptible of being proven false" because "any reasonable reader would have, in context, understood the letter to be expressing conjecture and speculation, not fact"); *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1249-50 (D.C. 2016) (statements describing plaintiff's letter as "laughably threatening" and "pathetically lame chest-thumping" did not "contain defamatory assertions of fact that were provably false at the time they were made"); *Ward v. Jeff Props., LLC*, 2010 WL 346459, *5 (N.C. Ct. App. 2010) ("In this context . . . defendant's characterization of plaintiff's conduct as harassment, pestering, threatening, irritating, and nonsense amounts to statements of opinion or rhetorical hyperbole that are not actionable . . . ."); *Benigni v. County of St. Louis*, 1995 WL 146822, *1 (Minn. Ct. App. 1995) ("Sharp's statement that Benigni was harassing and threatening was his characterization of Benigni's demeanor and behavior. Such characterizing of another's demeanor and behavior is a matter of opinion and thus not subject to a defamation claim.").

For these reasons, the Court agrees with Defendants that Plaintiff's defamation

claim must be dismissed. Given this determination, it is unnecessary to address Defendants' alternative grounds for seeking dismissal of that claim.

The dismissal will be without leave to amend. In their respective motions, each Defendant specifically requests that the dismissal be "with prejudice." (Doc. 9 at 1, 6; Doc. 22 at 1, 7.) In her response briefs, Plaintiff does not address, and thus implicitly assents to, Defendants' position of this issue. Nor does Plaintiff request leave to amend in the event of dismissal, and it appears that leave to amend would be futile—Plaintiff has not identified any new facts she might be able to allege in an amended complaint that would cure the deficiencies highlighted above.

The dismissal of the defamation claim also means that Schwanz will be dismissed as a party. In her motion, Schwanz asserts that, because "the only claim against [her] is the . . . defamation claim," she should be "dismissed as a defendant" once her motion is granted. (Doc. 9 at 6.) In response, Plaintiff once again does not address, and thus implicitly assents to, this assertion.[3]

Defendants also make cursory requests for the attorneys' fees and costs associated with their motions. (Doc. 9 at 6; Doc. 22 at 7.) These requests will be denied without prejudice. Rule 54(d)(2)(B)(ii) of the Federal Rules of Civil Procedure requires a party seeking attorneys' fees to file a motion that, among other things, "*specif[ies] the judgment* and the statute, rule, or other grounds entitling the movant to the award." *Id.* (emphasis added). Many courts have interpreted this language as requiring parties to wait until judgment has been entered before filing a fee-related motion. *See, e.g., Double J Inv., LLC v. Automation Control & Info. Sys. Corp.*, 2014 WL 12672618,

---

[3] The complaint is not a model of clarity as to whether Counts 1-5 (the federal civil rights claims) are asserted against both Defendants or only against The Scott. On the one hand, the introductory paragraph suggests that The Scott is the primary defendant in this case (Doc. 1 at 1) and Count 6, which is the defamation claim, is the only count in which Schwanz is specifically identified as a defendant (*id.* at 10 ["Defamation against Anne Schwanz and The Scott only"]). On the other hand, a different paragraph buried in the middle of the complaint, which is entitled "Relief Requested," can be read as suggesting that all six counts are being asserted "against Defendants." (*Id.* at 8.) In any event, because Plaintiff does not dispute Schwanz's contention that she is only named as a defendant in Count 6, the dismissal of that count means Schwanz is no longer a party.

*1 (D. Ariz. 2014) ("[A]ttorneys' fees and related non-taxable expenses may only be awarded following a final judgment. A final judgment was not entered . . . . Accordingly, the Court denies the current application without prejudice because it is premature.").

Accordingly,

**IT IS ORDERED** that:

(1) Defendants' motions to dismiss (Docs. 9, 22) are **granted**.

(2) Schwanz is dismissed as a party to this action.

(3) Defendants' requests for attorneys' fees and costs are **denied** without prejudice.

Dated this 20th day of November, 2020.

Dominic W. Lanza
United States District Judge